HILL, P.J.
*1137 Plaintiff Berkeley Cement, Inc. (Berkeley) appeals from the judgment entered against it after a jury trial in this dispute over construction of a building on the Merced campus of the University of California. Berkeley contends the jury's findings on the complaint and on the cross-complaint were fatally inconsistent; the trial court incorrectly instructed the jury that a particular specification in the parties' contract was a performance specification, rather than a design specification, based on an incorrect interpretation of the contract; the trial court improperly cut off plaintiff's cross-examination of a key witness before it was complete; the trial court improperly excluded relevant evidence on the issue of damages after holding a hearing on its admissibility; and the trial court erred in including expert witness fees and mediation fees in its award of costs to defendant. We conclude the expert witness fees were improperly included in the award of costs, but no other error in the judgment has been demonstrated. We modify the judgment to exclude the award of expert fees and affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Defendant Regents of the University of California (University) requested bids for construction of a social sciences and management building (SSMB) on University's Merced campus. Berkeley submitted the *255 low bid for the structural concrete work and was granted the contract. To create an attractive, energy efficient, and long-lasting structure, the plans and specifications called for a cast-in-place concrete building. Because the building was designed with architecturally exposed concrete, that is, areas exposed to view where the concrete itself was the finished surface of the building, the design specifications required a high quality concrete finish. They required the use of self-consolidating concrete in the architecturally exposed elements. They specified the aggregate (rock) to be used in the concrete in order to achieve a consistent color, and set a standard requiring minimization of the "bug holes" (voids in the concrete surface created by air pockets) in the architectural concrete.
When self-consolidating concrete was used to construct walls and columns, the construction required erection of formwork into which the concrete was poured. The contract documents required Berkeley to prepare mock-ups prior to pouring the walls and columns in place, to "permit verification of workmanship and visual qualities of the final completed installation." The architectural finish of the concrete was affected by the concrete mix, the formwork, and the placement of the concrete in the formwork.
Problems arose, delaying Berkeley's performance. The aggregate specified in the contract documents was not immediately available, and Berkeley used *1138 a substitute, which was later approved by University. Mock-ups were rejected by University; the concrete in the mock-ups exhibited bug holes excessive in quantity and size, rock pockets, discoloration, striations or "tiger striping," and honeycombing. Berkeley also experienced formwork "blowouts," where the formwork broke and the wall had to be redone. There was evidence the formwork Berkeley rented from its initial supplier was not designed for the pressures exerted by the self-consolidating concrete, which were higher than those exerted on formwork by conventional concrete.
Because of these and other difficulties, the concrete work fell behind schedule. Eventually, Berkeley engaged a subcontractor to provide and install formwork, in lieu of the rented and self-installed formwork it used initially. Additionally, University permitted Berkeley to complete the project using flowable conventional concrete, with which Berkeley was more familiar, instead of the self-consolidating concrete called for in the contract. Construction of the building was completed, and University paid Berkeley the full contract price for its work.
Berkeley submitted a Claim for Equitable Adjustment against University, seeking compensation for work it performed, which it claimed was extra work outside the contract. University denied the claim. Berkeley filed this action, alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of the implied covenant of the correctness of the plans and specifications. It sought to recover compensation for alleged extra work and delays in construction, which it blamed on defective specifications for the concrete mix and University's alleged interference with Berkeley's performance by improperly rejecting its proposed concrete mix design, shop drawings, and mockups. University cross-complained against Berkeley for breach of contract, alleging the architectural concrete finish of the building did not meet the contract standards for uniformity of color and lack of bug holes, and Berkeley did not perform within the contract time, causing University to incur additional expenses.
*256 After a lengthy jury trial, the jury found University did not breach the contract or either of the implied covenants; on the cross-complaint, it found Berkeley breached the contract, but University was not harmed by the breach. Berkeley's motion for judgment notwithstanding the verdict or for a new trial was denied. The trial court awarded costs to University. Berkeley appeals, challenging the judgment against it on its complaint and certain costs awarded.[1]
*1139 DISCUSSION
I.-IV.**
V. Costs
"The right to recover any of the costs of a civil action 'is determined entirely by statute.' " ( Anthony v. City of Los Angeles (2008) 166 Cal.App.4th 1011, 1014, 83 Cal.Rptr.3d 306.) Generally, the prevailing party is entitled as a matter of right to recover its costs. ( Code Civ. Proc., § 1032, subd. (b).) The costs that are allowable are listed in Code of Civil Procedure section 1033.5, subdivision (a). Items that "are not allowable as costs, except when expressly authorized by law" are listed in subdivision (b) of that section. Items that are not listed as allowable or not allowable "may be allowed or denied in the court's discretion." ( Code Civ. Proc., § 1033.5, subd. (c)(4).) All costs awarded must be "reasonable in amount" and "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." ( Code Civ. Proc., § 1033.5, subd. (c)(2), (3).)
Generally, the standard of review of an award of costs is whether the trial court abused its discretion in making the award. ( Seever v. Copley Press, Inc . (2006) 141 Cal.App.4th 1550, 1556, 47 Cal.Rptr.3d 206.) However, when the issue to be determined is whether the criteria for an award of costs have been satisfied, and that issue requires statutory construction, it presents a question of law requiring de novo review. ( Baker-Hoey v. Lockheed Martin Corp . (2003) 111 Cal.App.4th 592, 596-597, 3 Cal.Rptr.3d 593 ( Baker-Hoey ).)
"In ruling upon a motion to tax costs, the trial court's first determination is whether the statute expressly allows the particular item and whether it appears proper on its face. 'If so, the burden is on the objecting party to show [the costs] to be unnecessary or unreasonable.' [Citation.] Where costs are not expressly allowed by the statute, the burden is on the party claiming the costs to show that the charges were reasonable and necessary. [Citation.] 'Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion.' " ( Foothill-De Anza Community College Dist. v. Emerich (2007) 158 Cal.App.4th 11, 29-30, 69 Cal.Rptr.3d 678.)
Berkeley challenges two items of costs that were included in the award to University: (1) fees University paid to Berkeley's experts for time spent taking their depositions and (2) mediation fees.
*1140 A. Expert witness fees***
B. Mediation fees
Mediation costs are not listed among the costs that are expressly allowable or expressly not allowable. ( Code Civ. Proc., § 1033.5, subds. (a), (b).) "An item not specifically allowable under subdivision (a) nor prohibited under subdivision (b) may nevertheless be recoverable in the *257 discretion of the court if 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation.' " ( Ladas v. California State Auto. Assn . (1993) 19 Cal.App.4th 761, 774, 23 Cal.Rptr.2d 810 ( Ladas ).) Consequently, mediation costs fall within the category of costs that may be awarded in the trial court's discretion. ( Code Civ. Proc., § 1033.5, subd. (c)(4).) "Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion." ( Ladas, supra , at p. 774, 23 Cal.Rptr.2d 810.)
" ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citations.] 'The burden is on the party complaining to establish an abuse of discretion....' [Citations.] '[T]he showing is insufficient if it presents facts which merely afford an opportunity for a difference of opinion.' " ( Brawley, supra , 161 Cal.App.4th at pp. 1137-1138, 74 Cal.Rptr.3d 832.)
The trial court's award of costs to University included $15,950 for fees University paid to mediators.[10] Berkeley challenges this award, arguing the costs were not "reasonably necessary to the conduct of the litigation," but were "merely convenient or beneficial to its preparation." ( Code Civ. Proc., § 1033.5, subd. (c)(2).) It contends mediation was voluntary, not court-ordered, and therefore the fees for mediation were not mandatory or necessary to the litigation.
The court-ordered mediation scheme is governed by Code of Civil Procedure sections 1775 through 1775.15. Under those statutes, " 'mediation'
*1141 means a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." ( Code Civ. Proc., § 1775.1, subd. (a).) Trial courts are granted discretion to order cases to mediation as an alternative to judicial arbitration, and the costs of that mediation are borne by the court. ( Code Civ. Proc., §§ 1775.2, 1775.3, 1775.4, 1775.5, 1775.8, 1141.18, 1141.28.) "The court shall not order a case into mediation where the amount in controversy exceeds fifty thousand dollars ($50,000)." ( Code Civ. Proc., § 1775.5.)
"Amenability of a particular action for mediation must be determined on a case-by-case basis," and the decision to send it to mediation "must be made by the court after consideration of the expressed views of the parties on the amenability of the case to mediation." ( Cal. Rules of Court, rule 3.891(a)(1), (b).) "Even after a case has been ordered to mediation, the mediator must inform the parties that participation in mediation is completely voluntary, refrain from coercing a party to continue its participation in the mediation and respect the right of each party to decide the extent of its participation or withdraw from the mediation." ( Jeld-Wen, Inc. v. Superior Court (2007) 146 Cal.App.4th 536, 541, 53 Cal.Rptr.3d 115 ; Cal. Rules of Court, rule 3.853.) "Voluntary participation and self-determination are fundamental principles of mediation that apply both to mediations in which the parties voluntarily elect to mediate and to those in which the *258 parties are required to go to mediation in a mandatory court mediation program or by court order." (Advisory Com. com., Deering's Ann. Codes, Rules (2018 ed.) foll. rule 3.853.)
As a practical matter, it is unlikely a trial court will order an action to mediation if the parties do not express interest in mediation or indicate it is not likely they will be able to resolve the matter through mediation. Whether the parties mediate pursuant to a private agreement to do so or pursuant to a court order, made after consulting the parties for their views on the amenability of the case to mediation, mediation is likely to occur only if the parties believe there is a realistic potential for reaching a settlement of the litigation.
Berkeley contends the mediation fees were not reasonably necessary, and therefore were not assessable as costs, solely because the mediation was voluntary, rather than court-ordered. We decline to adopt the blanket rule Berkeley advocates: that fees incurred for mediation that is not court-ordered are categorically not "reasonably necessary to the conduct of the litigation," and therefore are not allowable as costs as a matter of law.[11]
Under the statutes authorizing court-ordered mediation, the parties may have significant impact on the court's decision to order, or not order, the *1142 case to mediation, because the trial court must consider the expressed views of the parties on the amenability of the case to mediation before it makes the order. ( Cal. Rules of Court, rule 3.891(a)(1).) If the trial court orders a case to mediation, we may take that as an indication of the court's belief mediation is reasonably necessary in that case. The absence of a court order, however, is not an indication mediation is not reasonably necessary, at least when the case did not qualify for court-ordered mediation.
Adopting Berkeley's suggested rule would amount to a finding that mediation is reasonably necessary only in some cases in which the amount in controversy is $50,000 or less, and is never reasonably necessary where the amount in controversy exceeds $50,000. The fees in the latter cases would be disallowed without consideration of the circumstances of the particular case and whether, under those circumstances, mediation was a reasonably necessary means of attempting to resolve the dispute and avoid the expense of a trial. We decline to adopt such an arbitrary categorical rule.
In Gibson v. Bobroff (1996) 49 Cal.App.4th 1202, 57 Cal.Rptr.2d 235 ( Gibson ), the court determined that an award of costs for court-ordered mediation could be made under the discretionary provision of the costs statute ( Code Civ. Proc., § 1033.5, subd. (c)(4) ). There, the plaintiff prevailed at trial, and was awarded costs, including his share of the mediator's fees from a pretrial mediation. ( Gibson , supra , 49 Cal.App.4th at p. 1205, 57 Cal.Rptr.2d 235.) On appeal, the defendants argued the trial court abused its discretion by awarding mediation fees as costs, because they were not reasonably necessary to the conduct of the litigation. ( Id . at p. 1207, 57 Cal.Rptr.2d 235.) The court held "that when an unsuccessful mediation has been court-ordered, reasonably necessary expenses incident thereto may, in the sound discretion of the trial court, be awarded after trial to a prevailing party." ( Id . at p. 1209, 57 Cal.Rptr.2d 235.) Although the Gibson court expressly did not "decide whether a party prevailing after a trial *259 which is preceded by unsuccessful voluntary mediation would be entitled to such costs" ( Id. at p. 1209, fn. 7, 57 Cal.Rptr.2d 235 ), it recognized the need for mediation in litigation.
"Like the related arbitration scheme, mediation is fundamental to the conduct of litigation as it encourages the parties to settle their disputes before trial and exposes parties who fail to agree to a reasonable settlement proposal to the risk of a discretionary court determination that they should pay their opponent's share of the failed mediation." ( Gibson , supra , 49 Cal.App.4th at p. 1209, 57 Cal.Rptr.2d 235.) The court rejected the defendants' argument that, because the aim of mediation was to avoid trial, mediation costs could not be construed to be reasonably necessary to the conduct of the litigation. ( Id . at p. 1209, 57 Cal.Rptr.2d 235.) The court noted the same was true of contractual and judicial arbitration, the fees for which may be awarded as costs. "Encouraging the parties to resolve *1143 lawsuits at the earliest time and before a costly and time-consuming trial, is a necessary part of litigation as conducted in this state. The award of mediation fees is no less reasonably necessary to the conduct of litigation, than the award of arbitrator's fees ..., which costs are also statutorily authorized." ( Ibid . )
We conclude mediation fees incurred for mediation that was not ordered by the court are not categorically nonrecoverable as "not reasonably necessary to the conduct of litigation." The question whether mediation fees should be awarded as costs in a particular matter must be determined based on the facts and circumstances of the particular action. Berkeley does not contend the trial court erred in assessing the facts and circumstances of this case, when it made its determination that the mediation fees should be awarded. Consequently, Berkeley has not established any reversible error in the trial court's award of mediation fees as costs.
DISPOSITION
The judgment is modified to delete from the award of costs the amount of $6,486.25, which was awarded to University for deposition fees it paid to Berkeley's expert witnesses. As so modified, the judgment is affirmed. University is entitled to its costs on appeal.
WE CONCUR:
DETJEN, J.
SNAUFFER, J.

The two appeals have been consolidated.

See footnote *, ante .

See footnote *, ante .

The mediation fee award included $7,500 (University's one-half of the $15,000 mediator's fee) for a mediation that was canceled by Berkeley shortly before it was scheduled to take place, because Berkeley claimed it had discovered new evidence. The mediator could not fill the time slot with a replacement, and the fee became nonrefundable.

If the Legislature had intended such a categorical exclusion from cost awards, it could have easily included fees from mediation not ordered by the court in the list of costs that are not allowable (Code Civ. Proc., § 1033.5, subd. (b) ).